UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LUIS A. CANALES, #10-A-0768,

              Plaintiff,

    -vs-

M. SHEAHAN, et al.,

              Defendants.
_____

No. 12-CV-693(LJV)(HBS)
**Report and Recommendation
and Decision and Order**

## I.      Introduction

This case has been referred to the undersigned by Hon. Lawrence J. Vilardo for all pre-trial matters, including preparation of a Report and Recommendation on dispositive motions. (Dkt. Nos. 29, 41.) Currently pending before the Court are the Defendants' motions to dismiss (Dkt. Nos. 42, 44, 48) and Plaintiff's cross-motion to amend/correct (Dkt. No. 60.)  For the reasons set forth below, the Court grants Plaintiff's non-dispositive motion in part, and recommends denying Defendants' dispositive motions in their entirety.

## II.     Factual Background and Procedural History

Plaintiff Luis Canales ("Plaintiff"), an inmate in the care and custody of the State Department of Corrections and Community Supervision ("DOCCS"), filed this action against approximately 35 proposed defendants, based upon 22 causes of actions alleging a multitude of violations of his constitutional rights pursuant to 42 U.S.C. § 1983.

Many of the proposed defendants were dismissed by this Court upon initial screening, (Dkt. Nos. 1, 4), and, after Plaintiff's multiple attempts at amending his original complaint, the second amended complaint is currently the operative pleading. (Dkt. Nos. 6, 10, 24, 28, 32-33, 37.) The claims therein generally assert use of force and retaliation; denial of medical treatment and reasonable accommodation; and denial of library and mail services. (Dkt. No. 32 at 2-3.)

Defendants have moved to dismiss certain claims contained in the second amended complaint pursuant to Fed.R.Civ.P. 12(b)(6). (Dkt. Nos. 42, 44, 48.) Alternatively, Defendants seek a more definite statement pursuant to Fed.R.Civ.P. 12(e). (*Id.*)

In opposition to Defendants' motions, Plaintiff has filed a "cross-motion for leave to file an amended complaint" in which he does not challenge the substance of Defendants' motion to dismiss, but rather requests to amend his complaint for a third time in order to provide a more definite statement to cure the defects raised by Defendants. (Dkt. No. 61, ¶ 2.)[1]

Attached to Plaintiff's cross-motion is a proposed third amended complaint (Dkt. No. 60, Ex. A), which pares down the substance of his claims, eliminating Bartlett, Brois, Canfield, Chappius, Elmer, Evans, Fennessey, Hilman, Koenigsmann, Lee, Mackay, McCooey, Muccigrasso, Prack, Rhodes, Snyder, VonHagn, and Wenderlich as defendants; and presents eleven sets of claims or "causes of action" against the remaining defendants. He has abandoned his claims relating to interference with access

---

[1] Reading Plaintiff's submission as a response to Defendants' request for a more definite statement, the Court will recommend that the portion of Defendants' motion requesting relief under Fed.R.Civ.P. 12(e) be denied as moot.

to library and mail services, and has re-asserted his Eighth Amendment and Due Process claims, as discussed in further detail below.

For the reasons below, it is recommended that Defendants' motions to dismiss be denied, and their alternative motion for a more definite statement be denied as moot. Plaintiff's cross-motion for leave to amend is granted in part.

## III.   Discussion

### A.     General Principles of Law

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Nechis v. Oxford Health Plans*, Inc., 421 F.3d 96, 100 (2d Cir. 2005). It need not accept as true, however, allegations that are conclusory, that is, bare, unadorned allegations that lack specificity. *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009). To survive a motion to dismiss, "a complaint must contain sufficient factual matter...'to state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, the factual allegations must permit the Court "to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.

Because Plaintiff is proceeding *pro se*, the Court must "construe [the] complaint liberally and interpret it to raise the strongest arguments that it suggests." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (citation and internal quotations omitted).

Plaintiff brings this action under 42 U.S.C. § 1983, which imposes liability on anyone who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. In other words, to

recover under this section, a plaintiff must show a violation of a federal constitutional or statutory right.

Moreover, the personal involvement of defendants in an alleged constitutional deprivation is a prerequisite to an award of damages under § 1983. *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001); *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995);[2] *Al-Jundi v. Estate of Rockefeller*, 885 F.2d 1060, 1065 (2d Cir. 1989). Personal involvement may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation; (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the defendant created or permitted the continuation of a policy or custom under which unconstitutional practices occurred; (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating unconstitutional acts were occurring. *Colon*, 58 F.3d at 873.2 "There is no *respondeat superior* liability in § 1983 cases." *Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir. 1995). Thus, supervisory officials may not be held liable merely because they hold a position of authority. *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996).

B.    **Leave to Amend**

It appears from his submissions that Plaintiff acknowledges that many of his original 22 causes of action fail to state a claim upon which relief could be granted, and

---

[2] The Second Circuit, though recognizing the dispute, has yet to decide whether the Supreme Court's decision in *Iqbal* "may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations." *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013).

now cross-moves for leave to file a third amended complaint. Defendants oppose this motion on the ground that his proposed amendment would be futile. (Dkt. No. 62.)

Leave to file an amended complaint "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). Only "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . [or] futility of amendment" will result in the court's denial of a motion for leave to amend. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Dougherty v. Town of North Hempstead Bd. of Zoning Appeals*, 282 F.3d 83 (2d Cir. 2002); *Milanese v. Rust–Oleum*, 244 F.3d 104, 110 (2d Cir. 2001).[3] A district court need not grant leave if amendment would be futile, *Reed v. Friedman Mgmt. Corp.*, 541 Fed.Appx. 40, 41 (2d Cir. 2013), i.e., if the proposed claims could not withstand a motion to dismiss. *Dougherty*, 282 F.3d at 88 (stating that an "amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)"). Thus, the question before the Court is whether Plaintiffs' proposed claims can withstand a Rule 12(b)(6) motion to dismiss for failure to state a claim.[4]

Much like his previous submissions, Plaintiff's proposed third amended complaint is difficult to discern—it is comprised of two "factual statements" and eleven "causes of

---

[3] Although "[a] *pro se* complaint should not be dismissed 'without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated,'" *Engles v. Jones*, 144 F. Supp. 3d 413, 424 (W.D.N.Y. 2015) (quoting *Gray–Davis v. N.Y.*, 2015 WL 2120518 at *3 (N.D.N.Y. May 5, 2015)), Plaintiff already been afforded this opportunity multiple times.

[4] The Court notes that Plaintiff cannot re-assert claims that were previously dismissed with prejudice. (Dkt. No. 10.) *See Lee v. Underhill Wiping Cloth*, 13 Fed.Appx. 62 (2d Cir. 2001). To the extent the cross-motion might be construed as a motion for reconsideration of the Court's previous screening order, that motion is denied as meritless and/or untimely. These claims were, and remain, dismissed.

action" that are not successively numbered. (Dkt. No. 60.) For that reason the Court will examine Plaintiff's claims by subject matter and defendant.

### 1.    Personal Involvement: Supervisory Liability

As a threshold matter, Defendants argue that Plaintiff has not adequately pled supervisory liability with respect to certain named defendants. (Dkt. No. 62 at 4-5.) For the following reasons, the Court agrees, denying Plaintiff's motion to amend his complaint to include supervisory liability claims against defendants Griffin, Hungerford, Sheahan, and Venettozzi.

In the third amended complaint, Plaintiff states that defendants Griffin and Sheahan, former Superintendent and Deputy Superintendent for Security of Southport Correctional facility ("Southport"), respectively, were personally involved in an excessive force incident because they had received a written complaint about a corrections officer's previous conduct and took no action in response to that information, thereby permitting a future assault against Plaintiff to occur. (Dkt. No. 60 at 10-11.)

Plaintiff's allegations are insufficient under the 12(b)(6) standard, and also fails as a basis for granting leave to amend under *Grullon v. City of New Haven*, 720 F.3d 133, 140–41 (2d Cir. 2013).

In *Grullon*, the inmate-plaintiff's complaint lacked any allegations concerning the warden's personal involvement, but in opposition to the warden's motion to dismiss, plaintiff attached a copy of a letter he had written to the warden complaining of the conditions of his confinement and requested an opportunity to amend the complaint. 720 F.3d at 136-37. In concluding that the district court erred in dismissing the plaintiff's claims on personal involvement grounds without granting him leave to file an amended

complaint, the Second Circuit cautioned that "[a]t the pleading stage, even if [the plaintiff] had no knowledge or information as to what became of his Letter after he sent it, he would be entitled to have the court draw the reasonable inference if his amended complaint contained factual allegations indicating that the Letter was sent to the Warden at an appropriate address and by appropriate means that the Warden in fact received the Letter, read it, and thereby became aware of the alleged conditions of which *Grullon* complained." *Id.* at 141.

*Grullon* is easily distinguishable from the case here, where Plaintiff has attached a proposed amended complaint in what amounts to be his third opportunity to amend and, despite his ample opportunities to do so, he has failed to articulate the claim of personal involvement based on the alleged letter(s). Rather, he has only set forth the following allegation: "the Superintendent[s] had received written complaint of the [sic] C.O. Myers, and other officer[s'] use of excessive force against other inmates & was advised that the officer[s] should be discharged or reassigned due to persistent complaint[s]." (Dkt. No. 60 at 10-11.) Leave to amend here would be futile based on these threadbare allegations, and this finding appears to be consistent with a number of post-*Grullon* district court opinions dismissing complaints that base a claim of personal involvement solely on the supervisory prison official's receipt of a complaint or grievance.  *See Guillory v. Cuomo*, 616 Fed.Appx. 12, 14 (2d Cir. 2015) (summary order) (affirming dismissal where plaintiff "did not allege when and where the letters were sent, what they said, or how they were sent"),  *accord, Flynn v. Ward*, No. 15-CV-1028, 2016 WL 1357737, at *13 (N.D.N.Y. Apr. 5, 2016) ("While cognizant of *Grullon*, the Court finds that, as presently pleaded, plaintiff has failed to establish that Goppert

was personally involved in any constitutional deprivation. While the memoranda contain Goppert's name, plaintiff has failed to plead facts establishing where the memoranda were sent, by what means they were forwarded and what response, if any, he received from Goppert. Without more, the allegations are not enough to allege personal involvement in any constitutional deprivation.").

Accordingly, Plaintiff has not sufficiently alleged supervisory liability on behalf of Griffin and Sheahan,[5] and any amendment to include such a claim in the proposed third amended complaint would be futile. *See Grullon*, 720 F.3d at 140 ("Leave to amend may properly be denied if the amendment would be futile"); *see also Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (leave to amend may be denied plaintiff has repeatedly failed to cure deficiencies through prior amendments).

Plaintiff next claims that Hungerford caused injury to Plaintiff by not supervising the gallery thereby failing to witness the alleged assault on him by corrections officers on August 8, 2011. He also claims that Hungerford neglected to move Plaintiff to another housing area "away from the risk of being retaliate[d]" against. (Dkt. No. 60 at 12.)[6]

---

[5] To the extent Plaintiff seeks to establish supervisory liability against Sheahan based on his forwarding of a July 7, 2011, letter from Plaintiff requesting to be moved to a new housing unit (Dkt. No. 60 at 9), it is well-settled that where a supervisor merely received information of unconstitutional acts but reasonably acted upon it such as by referring or forwarding it to another staff member, personal involvement still cannot be shown. *See Goris v. Breslin*, 402 Fed.Appx. 582, 584 (2d Cir. 2010) (affirming dismissal of case where personal involvement "was limited to the receipt of two letters from [plaintiff], which [defendant] promptly referred to other individuals for investigation and response").

[6] Even if interpreted as a "failure-to-protect" claim under the Eighth Amendment, Plaintiff's allegations fall short because the facts alleged indicate that Hungerford was not actually present during an assault or incident, nor that Hungerford was aware of any specific assault or on notice that one might occur. *See, e.g., Bridgewater v. Taylor*, 832 F. Supp. 2d 337 (S.D.N.Y. 2011) (dismissing prisoner's § 1983 claim for failure to protect where defendant did not participate in,

"An allegation that a defendant failed to adequately train or supervise subordinates implicates the fourth *Colon* factor, i.e., that 'the defendant was grossly negligent in supervising subordinates who committed the wrongful acts.'" *Samuels v. Fischer*, 168 F.Supp.3d 625, 638 (S.D.N.Y. 2016) (quoting *Colon*, 58 F.3d at 873). To support a finding of personal involvement on that basis,

> Plaintiff must show that the defendant knew or should have known that there was a high degree of risk that his subordinates would behave inappropriately, but either deliberately or recklessly disregarded that risk by failing to take action that a reasonable supervisor would find necessary to prevent such a risk, and that failure caused a constitutional injury to Plaintiff.

*Id.* (alteration and internal quotation marks omitted).

The third amended complaint contains no allegations that Hungerford actually participated in any wrongdoing, but simply alleges that Hungerford was not present in the area where the assault occurred. (Dkt. No. 60 at 9, 12). Such generalized allegations fall short of adequately alleging any wrongful conduct on the part of Hungerford. *See Vogelfang v. Capra*, 889 F. Supp. 2d 489, 502 (S.D.N.Y. 2012) ("[T]he mere fact that a defendant possesses supervisory authority is insufficient to demonstrate liability for failure to supervise under § 1983.") (internal quotation marks omitted)). Again, Plaintiff fails to establish personal involvement by the named defendant and the supervisory liability claims against Hungerford are futile.

Finally, in the context of his August 25, 2011 Superintendent Hearing, Plaintiff claims that defendant Venettozzi, Director of Special Housing Unit ("SHU") Inmate

---

and had no other connection to, initial altercation and she was not present at all when second alleged altercation occurred).

Case 1:12-cv-00693-LJV-HBS   Document 63   Filed 03/28/17   Page 10 of 27

Disciplinary Program, is "liable for personal involvement" for violations of Plaintiff's rights to due process of law because Venettozzi was "informed of those violation's [sic] through his appeal and failed to remedy the wrong." (Dkt. No. 60 at 22.) His claim is therefore based solely on Venettozzi's affirmance of a disciplinary determination. (*Id.* at 14.) While this Court and others have previously held that merely affirming a disciplinary decision on appeal does not amount to personal involvement in a constitutional violation, *see, e.g.*, *Abdur-Raheem v. Selsky*, 598 F. Supp.2d 367, 370 (W.D.N.Y. 2009) (stating that affirming the disposition of a hearing "is not enough to establish [a defendant's] personal involvement), there has been disagreement among the courts to this end. *See Brown v. Brun*, No. 10-CV-0397, 2010 WL 5072125, at * 2 (W.D.N.Y. Dec. 7, 2010)) (noting that courts within the Second Circuit are split with regard whether to the act of affirming a disciplinary hearing is sufficient to allege personal involvement of a supervisory official, and concluding that the distinction appears to hinge upon whether the supervisory official proactively participated in reviewing the appeal or merely rubber-stamped the results).

Notwithstanding the split of authority, Plaintiff alleges no other facts other than Venettozzi's affirmance of the Superintendent Hearing to establish his personal involvement, and the appeal determination attached to the proposed third amended complaint (Dkt. No. 60 at 29), suggests no more than a "rubber-stamping" of the determination as contemplated by courts in this Circuit. *See, e.g., Scott v. Frederick*, No. 13-CV-605, 2015 WL 127864, at * 17 (N.D.N.Y. Jan. 8, 2015) (adopting "affirmance-plus standard, which holds that the mere rubber-stamping of a disciplinary determination is insufficient to plausibly allege personal involvement.") In order to

comply with the *Iqbal* pleading requirements, Plaintiff simply recites the *Colon* factors in their entirety and again, this is insufficient to allow for the amendment of the second amended complaint on this ground. *See Samuels*, 168 F. Supp. 3d at 636–37 ("Second Circuit law has long taught that, even within the context of the *Colon* framework, 'merely recit[ing] the legal elements of a successful § 1983 claim for supervisory liability . . . does not meet the plausibility pleading standard.'") (citing *Dotson v. Farrugia*, No. 11–CV–1126, 2012 WL 996997, at *6 (S.D.N.Y. Mar. 26, 2012).

### 2.    Eighth Amendment: Use of Mechanical Restraints in SHU

Plaintiff alleges that Hungerford and Sheahan "recommended and authorized that Plaintiff be placed in mechanical restraint[s] for 28 days" in violation of the Eighth Amendment prohibition against cruel and unusual punishment.   (Dkt. No. 60 at 26.) Specifically, he claims that the mechanical restraints were applied while in the exercise cage, and that they were not authorized or directed by Sheahan. Plaintiff also complains of receiving only one-hour of daily exercise and lack of proper ventilation and windows in his cell. (*Id.*)

Plaintiff fails to state a claim upon which relief can be granted, and thus it would be futile to allow its inclusion in the third amended complaint. Standards for operation of SHUs at DOCCS facilities are contained in DOCCS Directive 4933, codified at 7 N.Y.C.R.R. §§ 300-305. All SHU inmates are permitted one hour of daily outdoor exercise, *see* § 304.3, however, they may be mechanically restrained during that hour. *See* § 305.4(e)(5). Although he alleges that the restraints limited his movement, thereby preventing him from exercising properly for 28 days, this allegation fails to rise to the level of cruel and unusual punishment. *See Brown v. Coughlin*, No. 93-CV-0633, 1995

WL 643349, at *3 (W.D.N.Y. Oct. 13, 1995) ("being required to wear mechanical restraints in the manner required and during exercise periods does not constitute the unnecessary and wanton infliction of pain.") (citing *Whitley v. Albers*, 475 U.S. 312 (1985)); *accord Gomez v. Sepiol*, No. 11-CV-1017, 2014 WL 1575872, at *16 (W.D.N.Y. Apr. 11, 2014) (holding that plaintiff's allegations that he was required to wear handcuffs and a waist chain during exercise and visits fail to state a claim of cruel and unusual punishment under the Eighth Amendment).

Moreover, Plaintiff's other complaints do not allege that he was subject to anything other than normal SHU conditions (one hour of exercise, poor ventilation in SHU cell) and as such do not state a claim upon which relief can be granted. *See Marino v. Watts*, No. 12-CV-801, 2015 WL 5603454, at *3 (N.D.N.Y. May 29, 2015), *report and recommendation adopted in part, rejected in part on other grounds*, 2015 WL 5603472 (N.D.N.Y. Sept. 23, 2015) (inmate who was placed in SHU for two and one half months, during which he did not have "window ventilation, sunshine, or fresh air" in addition to other harsh conditions, failed to establish that the conditions were sufficiently serious under the objective prong of the Eighth Amendment/Due Process analysis); *see also Hattley v. Goord*, No. 02 Civ. 2339, 2006 WL 785269, at *5–6 (S.D.N.Y. March 27, 2006) (finding, on summary judgment, normal conditions of SHU confinement do not amount to an Eighth Amendment violation).   Because these proposed claims cannot withstand a motion to dismiss for failure to state a claim, Plaintiff's motion for leave to amend on this ground is denied as futile.

### 3.     Deliberate Indifference to Medical Needs

Plaintiff claims that defendant Gorg was deliberately indifferent to his medical needs when she did not admit him to the infirmary to receive medical attention after he was allegedly assaulted by corrections officers. (Dkt. No. 60 at 10.) Although he characterizes her conduct as "negligence," he goes on to state that she "intentionally den[ied] . . . Plaintiff['s] request for . . . adequate medical attention." (*Id.* at 13.) Plaintiff states that he was in extreme pain, and suffered swelling, bruising, contusions, and paralysis in various parts of his body, as well as headaches and blurry vision. (*Id.* at 10.) Plaintiff also appears to allege that he was denied certain medication. (*Id.* at 13.) This claim is substantially the same as the one set forth in the second amended complaint, (Dkt. No. 32 ¶ 5), and Defendants have not moved for dismissal of the claim on the merits. (Dkt. No. 42-1 at 11.)   Their belated argument that Plaintiff only articulates a claim of medical negligence, which is not cognizable under § 1983 (Dkt. No. 62 at 8), is unavailing and the Court finds that Plaintiff's deliberate indifference claim against Gorg should press forward as articulated in the third amended complaint.

### 4.     Retaliation

Plaintiff advances a variety of vague, discursive claims of retaliation against multiple defendants. First, he claims that Hungerford, Lamb, and Myers subjected Plaintiff to excessive force and false disciplinary charges in retaliation for his filing of a grievance complaint regarding his confinement at Southport. (Dkt. No. 60 at 12.) Second, he claims that defendants Myers, Rafferty, and Skelly, acting in concert, filed a false misbehavior report against him. (*Id.* at 20, 22.) Finally, Plaintiff claims that defendant Skellly dropped his food tray, did not deliver his law library request, and

asked him "do you like to be filing grievance[s] against other [corrections officers]?" (*Id.* at 23.)

Plaintiff's claims of retaliation, exclusive of those brought against Lamb and Myers, fail to state a claim upon which relief can be granted.

It is well-established that "retaliation against a prisoner for pursuing a grievance violates the right to petition government for the redress of grievances guaranteed by the First and Fourteenth Amendments and is actionable under [42 U.S.C.] § 1983." *Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir.1996). "To state a First Amendment retaliation claim sufficient to withstand a motion to dismiss, a plaintiff must allege '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'" *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015) (quoting *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009)). The Second Circuit defines "'adverse action' objectively, as retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights.'" *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004) (quoting *Davis v. Goord,* 320 F.3d 346, 353 (2d Cir. 2003), *superseded by* 320 F.3d 346 (2d Cir. 2003)) (emphasis in original). The Second Circuit has "made clear that this objective test applies even where a particular plaintiff was not himself subjectively deterred; that is, where he continued to file grievances and lawsuits." *Id.* at 381. The Second Circuit recognized that there are situations in which *de minimis* retaliation is "outside the ambit of constitutional protection." *Id.* (citing *Davidson v. Chestnut*, 193 F.3d 144, 150 (2d Cir.1999)).

Plaintiff's complaint is replete with statements that defendants engaged in conduct "in retaliation." These statements, however, are completely conclusory. He makes various references to unspecified "grievances," "complaints," and at least one Article 78 proceeding in state court that he has filed. Plaintiff concludes that, as a result, all of Defendants' actions contained in the third amended complaint were simply done in retaliation, including, but not limited to, the use of force incident, a Tier III disciplinary hearing, the filing of multiple false misbehavior reports, and apparently an incident wherein he was withheld mail, library materials, and a food tray. (Dkt. No. 60 at 8-26.)

Read together, the core of Plaintiff's retaliation claims appears to be a rampant conspiracy between Hungerford, Lamb, Myers, Rafferty, and Skelly to retaliate against him in various ways.  Such conclusory allegations of wrongdoing, however, fail to satisfy the plausibility standard of *Iqbal* and must be dismissed. *See Santiago v. Pressley*, No.10 Civ. 4797,  2011 WL 6748386, *6 (S.D.N.Y. 2011) (The "conspiracy claim . . . fail[s] to satisfy the plausibility standard of *Iqbal* because [defendant] has offered nothing in support of those claims but conclusory allegations of wrongdoing.); *Peoples v. Fischer*, No.11 Civ. 2694, 2011 WL 6034374, *3 (S.D.N.Y. 2011) ("[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed.") (internal quotation marks omitted).

Taken individually, these allegations do not give rise to a retaliation claim. First, Plaintiff has not alleged personal involvement by Hungerford with respect to the false misbehavior report. To the extent he attempts to do so under a theory of supervisory liability, such a claim fails. *See* Discussion *supra* at III.B.1.

Plaintiff's claims against Rafferty are somewhat more specific. He claims that Rafferty denied him due process during a disciplinary hearing to "cover up a[n] excessive use of force incident . . ." and "in retaliation for "exercising a protected activity." (Dkt. No. 60 at 20.)  Again, however, fatal to Plaintiff's claim is that he alleges no causal connection other than an underlying conspiracy among several Southport employees.

Finally, he alleges that Skelly withheld mail, library materials, and a food tray in retaliation for a grievance that he filed against other "corrections officers."  Although   at least one court has held that preventing an inmate's access to the law library when the inmate has a pending lawsuit constitutes an adverse action for purposes of a retaliation claim, *see Guillory v. Haywood*, No. 13-cv-01564, 2015 WL 268933, at *17 (N.D.N.Y. Jan. 21, 2015), the present allegations do not establish an adverse action. Instead, Plaintiff appears to allege a single instance where Skelly did not deliver his requested library materials on an unspecified date in connection with an unknown grievance or complaint. Such an allegation of a single instance of vague conduct does not meet the requisite plausibility standard. *Cf. Shariff v. Poole*, 689 F.Supp.2d 470, 478-79 (W.D.N.Y. 2010) (plaintiff satisfied adverse action requirement by showing "an excessive number of cell searches, false misbehavior reports, confiscation of legal documents, and verbal threats followed by excessive pat frisking and searching"). Likewise, the alleged withholding of Plaintiff's mail is insufficient. *Battice v. Phillip*, No. CV–04–669, 2006 WL 2190565, at *6 (E.D.N.Y. Aug. 2, 2006) ("allegations that [defendant] withheld [plaintiff's] mail . . . do not constitute adverse actions."). As these

claims would be futile to include in the new complaint, Plaintiff's motion for leave to amend on this ground is denied excepting defendants Lamb and Myers.

### 5.    Due Process: Disciplinary Hearings

Plaintiff asserts various due process violations against defendants Hetrick and Rafferty stemming from two disciplinary hearings.

To state a claim under Section 1983 for denial of due process arising out of a disciplinary hearing, a plaintiff must show that he both: (1) possessed an actual liberty interest; and (2) was deprived of that interest without being afforded sufficient process. *See Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004); *Tellier v. Fields*, 280 F.3d 69, 79-80 (2d Cir. 2000). "Prison discipline implicates a liberty interest when it imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Ortiz*, 380 F.3d at 654 (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)); *Tellier*, 280 F.3d at 80.

"[W]hether the conditions of a segregation amount to an 'atypical and significant hardship' turns on the duration of the segregation and a comparison with the conditions in the general population and in other categories of segregation." *Arce v. Walker*, 139 F.3d 329, 336 (2d Cir. 1998). As to the duration of the disciplinary segregation, restrictive confinement of less than 101 days, on its own, does not generally rise to the level of an atypical and significant hardship, *Davis v. Barrett*, 576 F.3d 129, 133 (2d Cir. 2009), while disciplinary segregation under ordinary conditions of more than 305 days rises to the level of atypicality. *See Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000).

Plaintiff alleges that Hetrick presided over a hearing on August 19, 2011, apparently arising out of Plaintiff's spilling of a food tray. (Dkt. No. 60 at 23).  According

to Plaintiff, he was deprived of a liberty interest by being sentenced to 180 "days confinement in SHU, which involved: 23 hours per day in his cell with one hour of exercise; two showers per week; no restroom privacy; no access to general population services; his cell was dirty and he was "barely provided" cleaning supplies; and he suffered vision and hair loss. (Dkt. No. 60 at 24-25.)

The Court assumes without deciding that Plaintiff has plausibly alleged a protected liberty interest based on the length of his confinement in SHU.[7] *See Sims v. Artuz*, 230 F.3d 14, 23 (2d Cir. 2000) (noting that segregative sentences of 125–288 days are "relatively long" and therefore necessitate "specific articulation of . . . factual findings before the district court could properly term the confinement atypical or insignificant.") Where an inmate's liberty interest is implicated, "[b]ecause '[p]rison disciplinary proceedings are not part of a criminal prosecution . . . the full panoply of rights due a defendant in such proceedings does not apply." *Williams v. Menifee*, 331 Fed.Appx. 59, 60 (2d Cir. 2009) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 556, (1974)).

The procedural due process afforded to a prisoner charged with a violation in a disciplinary hearing consists of: "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary

---

[7] Plaintiff elsewhere states that he received a "confinement penalty of 3 month's, 2 month's suspended and remaining with 2 additional month's of (S.H.U.) [sic]." (Dkt. No. 60 at 26.) By the Court's calculations, Plaintiff pleads that he received 30 days in SHU from the same disciplinary hearing. For purposes of the pending motions, however, the Court reads any ambiguities in the third amended complaint in favor of Plaintiff.

action." *Menifee*, 331 Fed.Appx. at 60 (quoting *Sup't, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454, (1985)).

With regard to defendant Hetrick, Plaintiff simply asserts that Hetrick did not "consider[ ] Plaintiff innocent," and based the guilty determination upon a false misbehavior report. This is plainly insufficient, as "an inmate does not possess a due process right to be free from having a hearing officer rely upon an alleged false misbehavior report at a disciplinary hearing." *Cole v. N.Y. State DOCCS*, No. 914CV0539, 2016 WL 5394752, at *20 (N.D.N.Y. Aug. 25, 2016), *report and recommendation adopted*, 2016 WL 5374125 (N.D.N.Y. Sept. 26, 2016) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986), *cert. denied*, 485 U.S. 982 (1988)).

Plaintiff also claims that defendant Rafferty presided over a Superintendent Hearing on August 25, 2011, in connection with an August 8, 2011 misbehavior report. (Dkt. No. 60 at 20-21.) Plaintiff's penalty, after being found guilty, was twelve months of SHU with three months suspended, six months deferred, and twelve months loss of good time. (*Id.* at 20.) Plaintiff claims that he was denied the rights to present evidence and call witnesses and was denied an impartial hearing officer. (*Id.* at 14.) Specifically, Plaintiff states that he requested, but was not permitted to call, an unidentified witness who would have testified to observing the assault on Plaintiff, and that Plaintiff was denied his past grievances, copies of photographs of his injuries, and the medical records of the corrections officers involved in the assault for him to present at the hearing. (*Id.* at 14-15.)

Defendants argue that Plaintiff's allegations fail to state a due process claim because the hearing officer was entitled to deny witness testimony and/or documentary

evidence as redundant or irrelevant, and Rafferty's refusal to allow this evidence was therefore proper. (Dkt. No. 62 at 11-13.) While they are correct that "[p]rison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence," *Wolff*, 418 U.S. at 566, there is no way of determining from the face of the third amended complaint why the evidence was excluded or whether it was justified. *Carpenter v. Dep't of Corr.*, No. 10 Civ. 8087, 2012 WL 1604878, at *3 (S.D.N.Y. May 8, 2012) ("whether the exclusion of evidence in this case was justified . . . cannot be determined on the fac[e] of the . . . complaint."); *accord Brooks v. Prack*, 77 F. Supp. 3d 301, 318 (W.D.N.Y. 2014) ("At this early stage of the litigation, considering the low standard required of a *pro se* plaintiff on a motion to dismiss, the Court finds that Plaintiff has stated a claim with regard to defendant Esgrow's failure to allow him to present witnesses and evidence at his disciplinary hearing."); *see also Vogelfang v. Capra*, 889 F.Supp.2d 489 (S.D.N.Y. 2012) (declining to hold, on motion to dismiss, that hearing officer had violated *Wolff* protections)).

Contrary to Defendants' further contention, Plaintiff's claims in this instance are not conclusory. (Dkt. No. 62 at 11-13.) He states that an unidentified witness, whom he was denied, was in cell location A-1-1 where Plaintiff was being escorted and would have testified that Plaintiff was beaten by Lamb and Myers. (Dkt. No. 60 at 15.) He goes on to state that the grievances requested would have been relevant to the corrections officers' motivation behind the misbehavior report and the alleged assault, i.e., retaliation (*id.*), that the medical condition of Myers was relevant to whether Plaintiff

committed the assault upon him and was guilty of the charges brought (*id.*), and that photographs of Plaintiff's injuries would show that he was assaulted by the officers. (*Id.* at 16.) Finally, Plaintiff contends he was not provided a reason for being denied this evidence. (*Id.* at 15-16.)

 "[T]he law is well settled that in assessing the alleged futility of a proposed amended complaint, the Court must assume the truth of the allegations in the proposed amended complaint." *Wallace v. Warden of M.D.C.*, No. 14CIV6522, 2016 WL 6901315, at *8 (S.D.N.Y. Nov. 23, 2016). Accordingly, whether Plaintiff was entitled to that evidence is not properly addressed in Defendants' opposition to the motion to amend, although such an argument may provide the basis for a successful summary judgment motion. *But see Colantuono v. Hockeborn*, 801 F. Supp. 2d 110, 115 (W.D.N.Y. 2011) ("Here, plaintiff has not alleged what Porter would have testified about, much less what the substance of Porter's testimony would have been, or how it would have helped plaintiff. Again, plaintiff must allege facts making his claims plausible, and this bare allegation that one witness was denied fails to meet that standard.")

With regard to his allegations that Rafferty refused Plaintiff access to certain documentary evidence and to call witnesses, Plaintiff's motion to amend the complaint to assert this claim is granted. Accordingly, the Court finds that Plaintiff has pled sufficient facts to meet the requirements of 12(b)(6), and the Court will permit its addition.

### 6.    Eighth Amendment: Restricted Diet

Plaintiff claims that his Eighth Amendment right to be free from cruel and unusual punishment was violated when defendant Sheahan imposed a seven-day restricted diet

in connection with a misbehavior report in which Plaintiff was alleged to have spilled a food tray.[8] (Dkt. No. 60 at 24, 26). Plaintiff states that the diet was "nutritionally inadequate," and that he suffered abdominal pain, weight loss, and emotional distress as a result. (*Id.*) He further alleges that Sheehan knew the diet was nutritionally inadequate. (*Id.*)

To plead a conditions-of-confinement claim, a plaintiff must allege "(1) a deprivation that is 'objectively, sufficiently serious' that he was denied 'the minimal civilized measure of life's necessities,' and (2) a 'sufficiently culpable state of mind' on the part of the defendant official, such as deliberate indifference to inmate health or safety." *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Moreover, the Eighth Amendment requires "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983) (*per curiam*) (internal quotation marks omitted).

Defendants appear to rely on *McEachin v. McGuinnis*, 357 F.3d 197 (2d Cir. 2004), in support of their motion for dismissal. (Dkt No. 62 at 15.) Therein, the Second Circuit affirmed the District Court's *sua sponte* dismissal of a prisoner's Eighth Amendment claim where plaintiff asserted that he suffered severe stomach pain and a three-pound weight loss as a result of a week-long restricted diet pending a disciplinary hearing. 357 F.3d at 199, 205.  Because the complaint contained no allegation that the "loaf" diet was nutritionally inadequate, posed an imminent health risk, or physically

---

[8] DOCCS regulations provide that an inmate in SHU may be placed on a restricted diet for up to seven days pending the outcome of a disciplinary hearing regarding infractions related to food handling. 7 N.Y.C.R.R. § 304.2.

injured the plaintiff, the District Court concluded that plaintiff had established neither that the deprivation imposed by the restrictive diet was of constitutional magnitude, nor that the defendants acted "maliciously and sadistically to cause harm." *Id.* at 199.

Unlike *McEachin,* Plaintiff here has alleged that the prison officially knowingly imposed upon Plaintiff a diet that did not contain "sufficient calories, vitamins, and nutrients to maintain his physical and mental health," resulting in gastrointestinal problems for which he received prescribed medication. (Dkt. No. 60 at 26). The Court finds these allegations sufficient to state a claim upon which relief can be granted. *See Willey v. Kirkpatrick*, 801 F.3d 51, 69 (2d Cir. 2015) ("[N]otwithstanding that courts in this Circuit routinely have dismissed inadequate-nutrition claims . . . Willey's claim is not that all restricted diets are unconstitutional, but that the particular food he received was. Especially in light of the liberality courts must show to *pro se* pleadings, we find that Willey adequately pleaded this claim by alleging that his restricted diet [comprised of stale bread and dried cabbage] was unusually unhealthy.") (internal quotations and citations omitted; alterations added); *see also Phelps v. Kapnolas*, 308 F.3d 180, 186 (2d Cir. 2002) (complaint asserted Eighth Amendment claim where plaintiff alleged prison officials deprived inmate of nutritionally adequate diet for 14 straight days and knew that inmate's diet was inadequate and likely to inflict pain and suffering).

Because Plaintiff has pled sufficient facts to meet the requirements of 12(b)(6), the Court will permit the addition of this claim.

### 7.    Eighth Amendment: Use of Force

Defendants have previously conceded that the excessive force claims against defendants Lamb and Myers, arising out of the August 8, 2011 use of force incident, are not subject to dismissal. (Dkt. No. 62 at 4.)

In connection with the same August 8, 2011 use of force incident involving Lamb and Myers, Plaintiff claims that defendant Shumaker "arrived on the scene before allegedly Plaintiff would have to be subdued and participated in the use of excessive force by blowing a fist to Plaintiff after holding from his back [sic]." (Dkt. No. 60 at 10.)

Accepting as true the allegations that defendant Shumaker struck Plaintiff while he was already restrained by at least two corrections officers and wearing leg shackles, Plaintiff would state a plausible Eighth Amendment claim. Therefore, the court will permit the addition of an excessive force claim against Shumaker. *See, e.g., Dallio v. Santamore*, No. 06–CV–1154, 2010 WL 125774, at *8–9 (N.D.N.Y. Jan.7, 2010) (finding that allegations that assaulting officers continued to hit plaintiff after he was restrained and thus compliant and defenseless triggered an Eighth Amendment claim); *see generally Sims v. Artuz*, 230 F.3d 14, 22 (2d Cir. 2000) ("a prisoner who alleges facts from which it could be inferred that prison officials subjected him to excessive force, and did so maliciously and sadistically, states an Eighth Amendment claim on which he is entitled to present evidence.")

### D.    Rule 12(e) Motion for a More Definite Statement

Defendants also move for a more definite statement under Fed.R.Civ.P 12(e). Given that the Court finds Plaintiff has filed what is essentially a response to

Defendants' request by way of his proposed third amended complaint, the Court recommends denial of Defendants' motion for a more definite statement as moot.

### E.     Parties and Remaining Claims

Because certain of Plaintiff's proposed amendments can withstand a 12(b)(6) motion to dismiss for failure to state a claim, the Court will accept the third amended complaint for docketing but dismisses all of the third amended complaint[9] except for the following: (1) Plaintiff's excessive force and retaliation claims against defendants Lamb, Myers, and Shumaker; (2)  his deliberate indifference to medical needs claim against Gorg; (3) his due process claim against Rafferty based on the alleged exclusion of exculpatory evidence at a Superintendent Hearing; and (4) his conditions-of-confinement claim against Sheahan based on the imposition of a restricted diet.

All remaining defendants, identified or not, should be dismissed from this action for Plaintiff's failure to state a claim against them pursuant to Fed.R.Civ.P. 12(b)(6) or 28 U.S.C. §§ 1915(e)(2)(B); 1915A(b).

## IV.    Conclusion

It is recommended that Defendants' motions to dismiss (Dkt. No. 42, 44, 48) be **DENIED in their entirety**.

Further, it is ordered that Plaintiff's (non-dispositive) cross-motion for Leave to Amend be **GRANTED in part** insofar as the claims discussed above survive 12(b)(6) scrutiny, and **DENIED in all other respects as futile**.

---

[9] For purposes of clarity the Court reiterates that the following claims cannot go forward: any and all claims previously dismissed at initial screening that Plaintiff sought to re-plead in the third amended complaint; any and all claims abandoned from the second amended complaint; and the "causes of action" determined to be futile, as discussed above.

The Clerk of Court is directed to separately docket Plaintiff's proposed third amended complaint, which is attached to Plaintiff's cross-motion for Leave to Amend at Exhibit A (Dkt. No. 60, Ex. A) as the "third amended complaint." The Clerk shall terminate every defendant except Gorg, Lamb, Myers, Rafferty, Sheahan, and Shumaker.

The remaining Defendants shall have thirty (30) days to answer the third amended complaint.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

With respect to Defendants' motions to dismiss, **ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. Proc. 72(b) and Local Rule 72(b).

The District Court ordinarily will refuse to consider on *de novo* review arguments, case law and evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. *See*, *e.g.*, *Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988.

The parties are reminded that, pursuant to Rule 72(b) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 72(b) may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Report and Recommendation and Order to Plaintiff and Defendants.

**IT IS SO ORDERED.**

_____/s Hugh B. Scott_____
HON. HUGH B. SCOTT
United States Magistrate Judge

Dated: March 28, 2017
        Buffalo, New York